

**U.S. Department of Justice**

*United States Attorney*
*District of Connecticut*

*Connecticut Financial Center*
*157 Church Street, 25th Floor*
*New Haven, Connecticut 06510*

*(203)821-3700*
*Fax (203) 773-5376*
*www.justice.gov/usao/ct*

January 15, 2020

1/15/2020

Terence Ward, Esq.
Office of the Federal Defender
10 Columbus Boulevard
Hartford, Connecticut 06106

Re: United States v. Steven Finkler
Case No. 3:19cr199 (SRU)

Dear Attorney Ward:

This letter confirms the plea agreement between your client, Steven Finkler (the "defendant"), and the United States Attorney's Office for the District of Connecticut (the "Government") in this criminal matter.

**THE PLEA AND OFFENSE**

In consideration for the benefits offered under this agreement, the defendant agrees to plead guilty to Counts One, Two, Three, and Seven of the Superseding Indictment charging violations of 18 U.S.C. §§ 1029(a)(5), 1343, and 1028A.

The defendant understands that, to be guilty of a violation of 18 U.S.C. § 1029(a)(5), the following essential elements must be satisfied:

1. The defendant knowingly effected transactions with an access device or devices issued to another person or other persons;

2. By using the unauthorized access devices during that period, the defendant obtained things of value, their value together totaling $1,000 or more during that period;

3. The defendant acted with the intent to defraud; and

4. The defendant's conduct in some way affected commerce interstate or foreign commerce.

The defendant understands that, to be guilty of a violation of 18 U.S.C. § 1343, the following essential elements must be satisfied:

1. There was a scheme or artifice to defraud or to obtain money or property by materially false or fraudulent pretenses, representations or promises;

2. The defendant knowingly and willfully participated in the scheme or artifice to defraud, with knowledge of its fraudulent nature and with specific intent to defraud; and

3. In advancing, furthering, or carrying out the scheme, the defendant transmitted any writing, signal, or sound by means of a wire, radio, or television communication in interstate commerce or caused the transmission of any writing, signal, or sound of some kind by means of a wire, radio, or television communication in interstate commerce.

The defendant understands that, to be guilty of a violation of 18 U.S.C. § 1028A, the following essential elements must be satisfied:

1. The defendant knowingly transferred, possessed, or used the means of identification of another person;

2. Without lawful authority;

3. During and in relation to a felony enumerated in 18 U.S.C. § 1028A(c) or 18 U.S.C. § 2332(g)(5)(B), here, 18 U.S.C. § 1029(a)(5) and 18 U.S.C. § 1343; and

4. The defendant knew that the means of identification belonged to a real person.

**THE PENALTIES**

Imprisonment

A conviction under 18 U.S.C. § 1029(a)(5) and (c)(1)(B) carries a maximum penalty of 20 years imprisonment.

A conviction under 18 U.S.C. § 1028A carries a mandatory penalty of two years of imprisonment to run consecutively to any imprisonment imposed for the underlying predicate offense(s), here, 18 U.S.C. § 1029(a)(5) and 18 U.S.C. § 1343.

A conviction under 18 U.S.C. § 1343 carries a maximum penalty of 20 years imprisonment.

Supervised Release

In addition, for each of the offenses under 18 U.S.C. §§ 1029(a)(5) and 1343, the Court may impose a term of supervised release of not more than three years to begin after any term of imprisonment. For the offense under 18 U.S.C. § 1028A, the Court may impose a term of supervised release of not more than one year to begin after any term of imprisonment. 18 U.S.C. § 3583.

The defendant understands that, should he violate any condition of supervised release, he may be required to serve a further term of imprisonment of up to two years per violation pursuant to 18 U.S.C. § 3583 for each of the offenses under 18 U.S.C. §§ 1029(a)(5) and 1343 and up to one year per violation pursuant to 18 U.S.C. § 3583 for the offense under 18 U.S.C. § 1028A.

Fine

The offenses under 18 U.S.C. §§ 1029(a)(5) and 1343 each carry a maximum fine of $250,000. The offense under 18 U.S.C. § 1028A carries no fine. The defendant is also subject to the alternative fine provision of 18 U.S.C. § 3571. Under this section, the maximum fine that may be imposed on the defendant is the greatest of the following amounts: (1) twice the gross gain to the defendant resulting from the offense; (2) twice the gross loss resulting from the offense; or (3) $250,000.

Special Assessment

In addition, the defendant is obligated by 18 U.S.C. § 3013 to pay a special assessment of $100 on each count of conviction, for a total of $400. The defendant agrees to pay the special assessment to the Clerk of the Court on the day the guilty plea is accepted.

Restitution

In addition to the other penalties provided by law, the Court must also order that the defendant make restitution under 18 U.S.C. § 3663A, and the Government reserves its right to seek restitution on behalf of victims consistent with the provisions of § 3663A. The scope and effect of the order of restitution are set forth in the attached Rider Concerning Restitution. Restitution is payable immediately unless otherwise ordered by the Court.

Regardless of restitution that may be ordered by the Court noted above, the defendant agrees to make restitution in the amount of at least $145,682.08, which includes losses to victims other than the victims of the offenses of conviction, pursuant to 18 U.S.C. § 3663A(a)(3). The restitution will be paid to various financial institutions who bore the losses from the defendant's conduct.

Interest, penalties and fines

Unless otherwise ordered, should the Court impose a fine or restitution of more than $2,500 as part of the sentence, interest will be charged on the unpaid balance of the fine or restitution not paid within 15 days after the judgment date. 18 U.S.C. § 3612(f). Other penalties and fines may be assessed on the unpaid balance of a fine or restitution pursuant to 18 U.S.C. § 3572(h), (*i*) and § 3612(g).

Forfeiture

The defendant agrees to forfeit to the United States of America, pursuant to 18 U.S.C. § 982(a)(2)(B), all right, title, and interest in any property constituting or derived from proceeds obtained directly or indirectly as a result of such violation, including one 18 Karat Gold Tri-Color XL Trinity Ring (Article #ENS842, Serial Number B4052854), and one black Apple iPhone X, bearing serial number 357273096058344, seized from a vehicle in North Haven, Connecticut, on May 14, 2019.

The defendant agrees that by virtue of his plea of guilty he waives any rights or cause of action to claim that he is a "substantially prevailing party" for the purpose of recovery of attorney fees and other litigation costs in any related forfeiture proceeding pursuant to 28 U.S.C. § 2465(b)(1).

**THE SENTENCING GUIDELINES**

Applicability

The defendant understands that the Court is required to consider any applicable Sentencing Guidelines as well as other factors enumerated in 18 U.S.C. § 3553(a) to tailor an appropriate sentence in this case and is not bound by this plea agreement. The defendant agrees that the Sentencing Guideline determinations will be made by the Court, by a preponderance of the evidence, based upon input from the defendant, the Government, and the United States Probation Office. The defendant further understands that he has no right to withdraw his guilty plea if his sentence or the Guideline application is other than he anticipated, including if the sentence is outside any of the ranges set forth in this agreement.

Acceptance of Responsibility

At this time, the Government agrees to recommend that the Court reduce by two levels the defendant's adjusted offense level under § 3E1.1(a) of the Sentencing Guidelines, based on the defendant's prompt recognition and affirmative acceptance of personal responsibility for the offense. Moreover, should the defendant qualify for a decrease under § 3E1.1(a) and his offense level determined prior to the operation of subsection (a) is level 16 or greater, the Government will file a motion with the Court pursuant to § 3E1.1(b) which recommends that the Court reduce the defendant's Adjusted Offense Level by one additional level based on his prompt notification

of his intention to enter a plea of guilty. The defendant understands that the Court is not obligated to accept the Government's recommendations on the reductions.

The above-listed recommendations are conditioned upon the defendant's affirmative demonstration of acceptance of responsibility, by (1) truthfully admitting the conduct comprising the offense(s) of conviction and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under § 1B1.3 of the Sentencing Guidelines, and (2) disclosing to the United States Attorney's Office and the United States Probation Office a complete and truthful financial statement detailing the defendant's financial condition. The defendant expressly authorizes the United States Attorney's Office to obtain a credit report concerning the defendant.

In addition, the Government expressly reserves the right to seek denial of the adjustment for acceptance of responsibility if the defendant engages in any acts, unknown to the Government at the time of the signing of this agreement, which (1) indicate that the defendant has not terminated or withdrawn from criminal conduct or associations (§ 3E1.1 of the Sentencing Guidelines); (2) could provide a basis for an adjustment for obstructing or impeding the administration of justice (§ 3C1.1 of the Sentencing Guidelines); or (3) constitute a violation of any condition of release. Moreover, the Government reserves the right to seek denial of the adjustment for acceptance of responsibility if the defendant seeks to withdraw his guilty plea or takes a position at sentencing, or otherwise, which, in the Government's assessment, is inconsistent with affirmative acceptance of personal responsibility. The defendant understands that he may not withdraw his plea of guilty if, for the reasons explained above, the Government does not make one or both of the recommendations or seeks denial of the adjustment for acceptance of responsibility.

Stipulation

Pursuant to § 6B1.4 of the Sentencing Guidelines, the defendant and the Government have entered into the attached stipulation, which is a part of this plea agreement. The defendant understands that this stipulation does not set forth all of the relevant conduct and characteristics that may be considered by the Court for purposes of sentencing. The defendant understands that this stipulation is not binding on the Court. The defendant also understands that the Government and the United States Probation Office are obligated to advise the Court of any additional relevant facts that subsequently come to their attention.

Guideline Stipulation

The parties agree as follows:

The Guidelines Manual in effect on the date of sentencing is used to determine the applicable Guidelines range.

Count One

The defendant's base offense level under U.S.S.G. § 2B1.1(a)(1) is seven. That level is increased by four pursuant to U.S.S.G. § 2B1.1(b)(1)(C) because the loss to the victims of Count One was greater than $15,000 but less than $40,000. The adjusted offense level is 11.

Count Three

The defendant's base offense level under U.S.S.G. § 2B1.1(a)(1) is seven. That level is increased by ten pursuant to U.S.S.G. § 2B1.1(b)(1)(F) because the loss to the victims of the wire fraud scheme was greater than $150,000 but less than $250,000. Under U.S.S.G. § 2B1.1(b)(2)(A)(i), two additional levels would be added because the offense involved more than ten victims. *See* U.S.S.G. § 2B1.1, Application Note 4(E).

It is the Government's position that, under U.S.S.G. § 2B1.1(b)(11)(C)(i), two levels are added based on the defendant's unauthorized use of a means of identification, specifically the name and date of birth of G.T., unlawfully in order to obtain other means of identification. The defendant disputes this enhancement and reserves the right to argue that it does not apply.

Under the Government's calculations, the adjusted offense level is 21. Under the defendant's calculations, the adjusted offense level is 19.

Grouping

Pursuant to U.S.S.G. § 3D1.2, including Application Note 6, Counts One (access device fraud) and Three (wire fraud) are grouped. Pursuant to U.S.S.G. § 3D1.1(b)(2), the offenses under 18 U.S.C. § 1028A are excluded from the grouping rules.

The parties agree that three levels are subtracted under U.S.S.G. § 3E1.1 for acceptance of responsibility, resulting in a total offense level of 18, under the Government's calculations, or 16, under the defendant's calculations.

Based on an initial assessment, the parties agree that the defendant falls within Criminal History Category VI. The parties reserve the right to recalculate the defendant's Criminal History Category and corresponding sentencing ranges if this initial assessment proves inaccurate.

Government's Calculations. A total offense level 18, assuming a Criminal History Category VI, would result in a range of 57 to 71 months of imprisonment (sentencing table) and a fine range of $10,000 to $100,000, U.S.S.G. § 5E1.2(c)(3). The defendant is also subject to a supervised release term of one year to three years. U.S.S.G. § 5D1.2.

Each aggravated identity theft charge carries a mandatory sentence of 24 months' imprisonment, to be imposed consecutively to any sentence for any other charge. 18 U.S.C. § 1028A(b)(2) & (b)(3). The Guidelines range for each aggravated identity theft charge is thus 24 months. Therefore, the total Guidelines range is 81 to 95 months of imprisonment (if the 24-month sentences are imposed concurrent to each other) or 105 to 119 months of imprisonment (if the 24-month sentences are imposed consecutive to each other).

Defendant's Calculations. A total offense level 16, assuming a Criminal History Category VI, would result in a range of 46-57 months of imprisonment (sentencing table) and a fine range of $10,000 to $95,000, U.S.S.G. § 5E1.2(c)(3). The defendant is also subject to a supervised release term of one year to three years. U.S.S.G. § 5D1.2.

Each aggravated identity theft charge carries a mandatory sentence of 24 months' imprisonment, to be imposed consecutively to any sentence for any other charge. 18 U.S.C. § 1028A(b)(2) & (b)(3). The Guidelines range for each aggravated identity theft charge is thus 24 months. Therefore, the total Guidelines range is 70 to 81 months of imprisonment (if the 24-month sentences are imposed concurrent to each other) or 94 to 105 months of imprisonment (if the 24-month sentences are imposed consecutive to each other).

The Government reserves its right to request that the mandatory 24-month sentences for the aggravated identity theft charges be imposed consecutively to each other. The Government and the defendant reserve their rights to seek a departure or a non-Guidelines sentence, and both sides reserve their right to object to a departure or a non-Guidelines sentence.

The defendant understands that the Court is not bound by this agreement on the Guideline ranges specified above. The defendant further understands that he will not be permitted to withdraw the guilty plea if the Court imposes a sentence outside any of the ranges set forth in this agreement.

In the event the United States Probation Office or the Court contemplates any sentencing calculations different from those stipulated by the parties, the parties reserve the right to respond to any inquiries and make appropriate legal arguments regarding the proposed alternate calculations. Moreover, the parties reserve the right to defend any sentencing determination, even if it differs from that stipulated by the parties, in any post-sentencing proceeding.

Information to the Court

The Government reserves its right to address the Court with respect to an appropriate sentence to be imposed in this case. Moreover, the Government will discuss the facts of this case, including information regarding the defendant's background and character, 18 U.S.C. § 3661, with the United States Probation Office and will provide the Probation Officer with access to material in its file, with the exception of grand jury material.

The defendant and the Government further agree that all other aspects of the sentence, including the imposition of any fine and the determination of the length and conditions of supervised release, about which the parties intend to make recommendations, will be left to the discretion of the Court.

**WAIVER OF RIGHTS**

The defendant acknowledges and agrees that he is knowingly, intelligently, and voluntarily waiving the following rights:

Waiver of Trial Rights and Consequences of Guilty Plea

The defendant understands that he has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent him.

The defendant understands that he has the right to plead not guilty or to persist in that plea if it has already been made, the right to a public trial, the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against him, the right not to be compelled to incriminate himself, the right to testify and present evidence, and the right to compel the attendance of witnesses to testify in his defense. The defendant understands that by pleading guilty he waives those rights and that, if the plea of guilty is accepted by the Court, there will not be a further trial of any kind.

The defendant understands that, if he pleads guilty, the Court may ask him questions about each offense to which he pleads guilty, and if he answers those questions falsely under oath, on the record, and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or making false statements.

Waiver of Statute of Limitations

The defendant agrees that, should the conviction following defendant's guilty plea be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this plea agreement (including any indictment or counts the Government has agreed to dismiss at sentencing pursuant to this plea agreement) may be commenced or reinstated against the defendant, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement or reinstatement of such prosecution. The defendant agrees to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date the plea agreement is signed.

Waiver of Right to Challenge Conviction

The defendant acknowledges that under certain circumstances he is entitled to challenge his conviction. By pleading guilty, the defendant waives his right to appeal or collaterally attack his conviction in any proceeding, including but not limited to a motion under 28 U.S.C. § 2255 and/or § 2241. In addition to any other claims he might raise, the defendant waives his right to challenge his conviction based on (1) any non-jurisdictional defects in the proceedings before entry of this plea, (2) a claim that the statute(s) to which the defendant is pleading guilty is unconstitutional, and (3) a claim that the admitted conduct does not fall within the scope of the statute. This waiver does not preclude the defendant from raising a claim of ineffective assistance of counsel in an appropriate forum.

Waiver of Right to Appeal or Collaterally Attack Sentence

The defendant acknowledges that under certain circumstances, he is entitled to challenge his sentence. In consideration for the benefits offered under this agreement, the defendant agrees

not to appeal or collaterally attack the sentence in any proceeding, including but not limited to a motion under 28 U.S.C. § 2255 and/or § 2241 if that sentence does not exceed 95 months of imprisonment, a three-year term of supervised release, a $400 special assessment, a $150,000 fine, and $145,682.08 in restitution, even if the Court imposes such a sentence based on an analysis different from that specified above. The Government and the defendant agree that this waiver applies regardless of whether the term of imprisonment is imposed to run consecutively to or concurrently with, in whole or in part, the undischarged portion of any other sentence that has been imposed on the defendant at the time of sentencing in this case. Furthermore, the parties agree that any challenge to the defendant's sentence that is not foreclosed by this provision will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) this waiver. This waiver does not preclude the defendant from raising a claim of ineffective assistance of counsel in an appropriate forum.

**ACKNOWLEDGMENT OF GUILT AND VOLUNTARINESS OF PLEA**

The defendant acknowledges that he is entering into this agreement and is pleading guilty freely and voluntarily because he is guilty. The defendant further acknowledges that he is entering into this agreement without reliance upon any discussions between the Government and him (other than those described in the plea agreement letter), without promise of benefit of any kind (other than the concessions contained in the plea agreement letter), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges his understanding of the nature of the offense to which he is pleading guilty, including the penalties provided by law. The defendant also acknowledges his complete satisfaction with the representation and advice received from his undersigned attorney. The defendant and his undersigned counsel are unaware of any conflict of interest concerning counsel's representation of the defendant in the case.

**SCOPE OF THE AGREEMENT**

The defendant acknowledges that this agreement is limited to the undersigned parties and cannot bind any other federal authority, or any state or local authority. The defendant acknowledges that no representations have been made to him with respect to any civil or administrative consequences that may result from this plea of guilty because such matters are solely within the province and discretion of the specific administrative or governmental entity involved. Finally, the defendant acknowledges that this agreement has been reached without regard to any civil tax matters that may be pending or which may arise involving him.

**COLLATERAL CONSEQUENCES**

The defendant understands that he will be adjudicated guilty of each offense to which he has pleaded guilty and will be deprived of certain rights, such as the right to hold public office, to serve on a jury, to possess firearms and ammunition, and in some states, the right to vote. Further, the defendant understands that if he is not a citizen of the United States, a plea of guilty may result in removal from the United States, denial of citizenship, and denial of admission to the United States in the future. The defendant understands that pursuant to section 203(b) of the Justice For All Act, the Federal Bureau of Prisons or the United States Probation Office will

collect a DNA sample from the defendant for analysis and indexing. Finally, the defendant understands that the Government reserves the right to notify any state or federal agency by which he is licensed, or with which he does business, as well as any current or future employer of the fact of his conviction.

**SATISFACTION OF FEDERAL CRIMINAL LIABILITY; BREACH**

The defendant's guilty plea, if accepted by the Court, will satisfy the federal criminal liability of the defendant in the District of Connecticut as a result of his participation in the access device fraud, wire fraud, and aggravated identity theft that forms the basis of the Indictment this case. After sentencing, the Government will move to dismiss Counts Four, Five, Six, Eight, Nine, and Ten of the Superseding Indictment.

The defendant understands that if, before sentencing, he violates any term or condition of this agreement, engages in any criminal activity, or fails to appear for sentencing, the Government may void all or part of this agreement. If the agreement is voided in whole or in part, the defendant will not be permitted to withdraw his guilty plea.

**NO OTHER PROMISES**

The defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this plea agreement, and none will be entered into unless set forth in writing, signed by all the parties.

This letter shall be presented to the Court, in open court, and filed in this case.

Very truly yours,

JOHN H. DURHAM
UNITED STATES ATTORNEY

SARALA V. NAGALA
ASSISTANT UNITED STATES ATTORNEY

[end of page]

      The defendant certifies that he has read this plea agreement letter and its attachment(s) or has had it read or translated to him, that he has had ample time to discuss this agreement and its attachment(s) with counsel and that he fully understands and accepts its terms.

STEVEN FINKLER
The Defendant

1/15/20
Date

I have thoroughly read, reviewed and explained this plea agreement and its attachment(s) to my client who advises me that he understands and accepts its terms.

TERENCE WARD, ESQ.
Attorney for the Defendant

1/15/20
Date

**STIPULATION OF OFFENSE CONDUCT AND RELEVANT CONDUCT**

The defendant and the Government stipulate to the following offense conduct and relevant conduct that give rise to the defendant's agreement to plead guilty to Counts One, Two, Three, and Seven of the Superseding Indictment:

1. In August 2017, the defendant, Steven Finkler ("the defendant"), lived and worked in Connecticut. As part of his employment, he visited the business office of two of his employer's customers, H.R. and T.R.

2. When he visited the office of H.R. and T.R., the defendant stole credit cards belonging to H.R. and T.R., and their business, from the H.R.'s handbag. The handbag was located in a room where the defendant would meet H.R. and T.R. when he visited them for work.

3. The defendant used H.R. and T.R.'s credit cards to make over 40 fraudulent charges between August 7 and August 28, 2017 in both Connecticut and New York, affecting interstate commerce. The charges included the defendant's purchase of jewelry for his girlfriend, Apple products and electronic devices, and other high end consumer and retail goods for either himself or his friends. The total loss to the victims was $20,892.75. The jewelry that the defendant bought using the victims' credit cards included, but was not limited to, the18 Karat Gold Tri-Color XL Trinity Ring (Article #ENS842, Serial Number B4052854) referenced in the Superseding Indictment.

4. On September 7, 2018, the defendant was released from a prior federal prison sentence unrelated to this case. While the defendant was in prison on the unrelated offense, he met the person identified in the Indictment as G.T. When the defendant met G.T., he convinced G.T. that he (the defendant) was a lawyer, and that if G.T. provided him with his personal information, including his date of birth, then the defendant would assist G.T. with some of his financial problems. In fact, the defendant was not a lawyer, and he went on to use G.T.'s identity without lawful authority for the purposes described herein.

5. On September 18, 2018, the defendant set up an account with the mobile device-based payment application Square called "GT Limited." The defendant used the means of identification of another person, specifically, the name and date of birth G.T., to register the GT Limited Square account. The defendant knew G.T. to be a real person.

6. At some point between September 18 and September 24, 2018, the defendant again used the means of identification of G.T., specifically, G.T.'s name, in order to set up a membership with a fitness center. The fitness center has locations across Connecticut. Between September 2018 and May 2019, the defendant continuously used G.T.'s means of identification, specifically, his name, in order to gain entry to these fitness centers.

7. The defendant would use his fraudulently obtained gym and fitness memberships to gain access to the facilities' locker rooms. Once in the locker rooms, the defendant would take victims' credit cards from lockers and use mobile device-based payment systems like Square, PayPal, and Clover/First Data to charge the cards for amounts of money ranging from approximately $500 to $4,575 that would be credited to financial accounts that the defendant controlled. The defendant then spent the money on personal expenses. The defendant knew that he did not have any authority to make any of the charges to the victims' credit card accounts.

8. Between at least October 25, 2018, and May 21, 2019, the defendant victimized more than 49 individuals, as well as their corresponding credit card companies. The total amount that the defendant defrauded these victims was approximately $124,789.33 (actual loss). Including attempted charges on victims' credit cards, the loss figure is $144,461.22.

9. The mobile payment applications that the defendant used in his scheme and artifice to defraud (PayPal, Square, and Clover) utilized the Internet to effectuate the fraudulent diversion of money from the victims to, ultimately, bank accounts that the defendant had access to and controlled.

10. On January 23, 2019, with intent to defraud, the defendant charged victim W.M.'s Navy Federal Credit Union credit card account ending in -8990 $1,555 using his "GT Limited" company registered with Square. That transaction caused the transmission of a writing and signal by means of a wire communication in interstate commerce. In relation to this charge, the defendant knowingly transferred, possessed, and used, without lawful authority, the name and date of birth of G.T. and the access device of W.M. (Navy Federal Credit Union credit card account ending in -8990).

11. The total attempted loss figure attributable to the defendant's frauds (including the fraud against H.R. and T.R. and the gym victims) is $165,353.97.

12. One black Apple iPhone X, bearing serial number 357273096058344, which was seized from a vehicle in North Haven, Connecticut, on May 14, 2019, constitutes or was derived from proceeds traceable to the defendant's violations of 18 U.S.C. § 1343.

This written stipulation is part of the plea agreement. The defendant and the Government reserve their right to present additional offense conduct and relevant conduct to the Court in connection with sentencing.

STEVEN A. FINKLER
The Defendant

TERENCE WARD, ESQ.
Attorney for the Defendant

SARALA V. NAGALA
ASSISTANT UNITED STATES ATTORNEY

**RIDER CONCERNING RESTITUTION**

The Court shall order that the defendant make restitution under 18 U.S.C. § 3663A as follows:

1. If the offense resulted in damage to or loss or destruction of property of a victim of the offense:

   A. Return the property to the owner of the property or someone designated by the owner; or

   B. If return of the property is impossible, impracticable, or inadequate, pay an amount equal to:

   The greater of -
   (I) the value of the property on the date of the damage, loss, or destruction; or
   (II) the value of the property on the date of sentencing, less the value as of the date the property is returned.

2. In the case of an offense resulting in bodily injury to a victim –

   A. Pay an amount equal to the costs of necessary medical and related professional services and devices related to physical, psychiatric, and psychological care; including non-medical care and treatment rendered in accordance with a method of healing recognized by the law of the place of treatment;

   B. Pay an amount equal to the cost of necessary physical and occupational therapy and rehabilitation; and

   C. Reimburse the victim for income lost by such victim as a result of such offense;

3. In the case of an offense resulting in bodily injury that results in the death of the victim, pay an amount equal to the cost of necessary funeral and related services; and

4. In any case, reimburse the victim for lost income and necessary child care, transportation, and other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense.

The order of restitution has the effect of a civil judgment against the defendant. In addition to the Court-ordered restitution, the Court may order that the conditions of its order of restitution be made a condition of probation or supervised release. Failure to make restitution as ordered may result in a revocation of probation, 18 U.S.C. § 3565, or a modification of the conditions of supervised release, 18 U.S.C. § 3583(e). Failure to pay restitution may also result in the defendant being held in contempt, or the defendant's re-sentencing to any sentence which might originally have been imposed by the Court. *See* 18 U.S.C. §§ 3613A, 3614. The Court may also order that the defendant give notice to any victims of his offense under 18 U.S.C. § 3555.