# EXHIBIT B

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------- X

UNITED STATES OF AMERICA,    : 10-CR-00627(KAM)
                             :
                             :
                             :
          -against-          : United States Courthouse
                             : Brooklyn, New York
                             :
                             :
RODNEY WATTS,                : Thursday, April 24, 2014
                             : 9:09 a.m.
          Defendant.         :
                             :
                             :

------------- X

TRANSCRIPT OF CRIMINAL CAUSE FOR SENTENCING
BEFORE THE HONORABLE KIYO A. MATSUMOTO
UNITED STATES DISTRICT JUDGE

A P P E A R A N C E S:

For the Government: LORETTA E. LYNCH, ESQ.
                    United States Attorney
                    Eastern District of New York
                        271 Cadman Plaza East
                        Brooklyn, New York 11201
                    BY: CATHERINE M. MIRABILE, ESQ.
                        BRIAN MORRIS, ESQ.
                        Assistant United States Attorneys

For the Defendant:  GREEN & WILLSTATTER
                        200 Mamaroneck Avenue
                        Suite 605
                        White Plains, New York 10601
                    BY: RICHARD D. WILLSTATTER, ESQ.

                    THOMPSON & KNIGHT LLP
                        900 Third Avenue
                        20th Floor
                        New York, New York 10022
                    BY: MARION BACHRACH, ESQ.
                        ANDY S. OH, ESQ.

SHERRY BRYANT, RMR, CRR

|  | PROCEEDINGS | 17 |

```
 1   not impose too much hardship on the family.
 2             You know, I just wanted to point out that there are
 3   no other family members who can really step in to help
 4   Mrs. Watts and that, you know, the Probation Department has
 5   found Mr. Watts cannot afford to pay a fine.  He's not a
 6   wealthy individual, and he has significant criminal financial
 7   penalties ahead of him.  And he's lost, you know, his ability
 8   to make money in finance, which was, of course, what he'd be
 9   most likely to be able to make a significant salary at.
10             Now, just moving on, if I may, I don't want to spend
11   too much time on it, but the government made what we think is
12   an inconsistent argument in saying that our client is
13   responsible for what he did despite being directed by
14   Mr. Dupree, but, on the other hand, their cooperator's guilt
15   is our client's responsibility.
16             And, you know, I just think that argument is
17   inconsistent.  It's clear to us that Mr. Watts was being
18   directed, as were the other members of the company, by the
19   chief executive officer of the company and that, you know,
20   guilt is personal and the persons who testified for the
21   government at the trial are responsible for their own actions.
22             Regarding Mr. Watts' character, he, as I've said,
23   routinely gives his time and effort and concern to others.
24   Not only is he dedicated to his family but also to his friends
25   and his community.  Despite this conviction, Mr. Watts is a
```

SHERRY BRYANT, RMR, CRR

PROCEEDINGS 18

1 good man who worked for a troubled company and its leader,
2 Mr. Dupree. This chapter of his life does not define him.
3 He's not a criminal by nature, as I've said.
4     And although we've already argued that he doesn't
5 need to be specifically deterred, I want to address for a
6 moment general deterrence, because, as we pointed out, the
7 empirical evidence does not support the notion that there's a
8 need for general deterrence, which if you sentence him to a
9 severe period of imprisonment that somehow this will prevent
10 other people from committing these crimes.
11     This belief in general deterrence is really a sort
12 of ideology and is not entirely based in empirical evidence.
13 So we're asking the Court to consider a term of intermittent
14 imprisonment, because the Court, by 3553(a), is called upon to
15 consider the types of sentences available.
16     So even if the Court imposed a term of imprisonment,
17 a short term of imprisonment, the Court could make part of
18 that supervised release with either home detention, community
19 confinement or intermittent confinement. So you could fashion
20 a sentence that provides for that while the defendant is on
21 either probation or supervised release.
22     Now, in the alternative, we have suggested that a
23 short but definite sentence, as originally suggested by the
24 Sentencing Commission, should be considered. And we have
25 pointed to the original guideline range of 30 to 37 months

SHERRY BRYANT, RMR, CRR

PROCEEDINGS 19

that was enacted by the original guidelines back in 1987. And coincidentally, that would be roughly consistent with the sentence that you would get if you were to calculate it along the lines of the American Bar Association Task Force recommendations.

From Mr. Watts' point of view, of course, a sentence within that range would not be short by any means, because he's the person who would be doing it. But from counsel's point of view, it's a sensible range that could reunite him with his family in what we hope would be before too much permanent damage is done to his daughters. Mr. Watts, as I said, cannot afford to pay a fine, so we urge the Court not to impose one.

Regarding the criminal financial penalties, which are substantial, we ask the Court to commence a requirement that they be paid upon his release from imprisonment. In the draft that the Court received from the government, which has been revised upon our request, because there were a couple of problems that we had with the one you received I think yesterday or maybe the day before yesterday. Okay.

That has been changed, but still in the revised proposed order of forfeiture the due date in paragraph 3 is the date of the sentencing and that's when interest for forfeiture purposes begins to accrue. So, as I said to the government yesterday, we're asking that interest not begin to

SHERRY BRYANT, RMR, CRR

PROCEEDINGS 20

1 accrue until the defendant is released from a term of
2 imprisonment, should the Court decide to impose one.
3 When the Court fashions the requirement of payment
4 while on supervised release, we ask you to consider a
5 percentage of gross income, as the Court may have done in the
6 past, a percentage of income after certain mandatory
7 deductions are made from the defendant's income. Perhaps 20
8 percent, what the Court thinks is appropriate.
9 In short, Your Honor, we are asking the Court to
10 temper justice with mercy and to impose a sentence which is
11 not greater than necessary. That completes my application.
12 THE COURT: Thank you. Ms. Mirabile.
13 MS. MIRABILE: The government's position is largely
14 set forth in the sentencing memo dated April 21st, but there
15 are a few things that I would like to touch upon this morning.
16 And the government requests a sentence within the applicable
17 guidelines range, which is 97 to 121 months.
18 The defendant's crimes are serious and extensive and
19 the defendant is seemingly unrepentant. He minimizes the
20 seriousness of the offense and his culpability level. His
21 counsel had said that in determining a sentence, the Court
22 should focus on culpability; and the defendant is, in fact,
23 largely culpable for the criminal conduct. He played a
24 significant role in this fraud scheme.
25 The evidence at trial demonstrates that the

SHERRY BRYANT, RMR, CRR

PROCEEDINGS 33

1 adjusted offense levels, although I do note that unlike many
2 of the cases involving drug couriers, most of these financial
3 crimes are motivated by greed. I accept Mr. Watts did not
4 profit from his actions. He had a base salary, maybe some
5 potential for bonuses.
6     And in terms of what motivated him, I can't say it
7 was greed. It could have been his friendship with Mr. Dupree.
8 It could have been his desire to see GDC and its subsidiaries
9 succeed, but I don't think greed was a motivating factor here.
10 Nonetheless, it was an extensive fraud that resulted in
11 staggering losses to Amalgamated Bank.
12     As previously discussed, Mr. Watts was a manager and
13 supervisor in this conspiracy that involved more than five
14 participants and I, therefore, award a 3-level enhancement for
15 his role. The total offense level is 30, as set forth in the
16 presentence report.
17     Further, as previously noted, Mr. Watts has no known
18 prior criminal convictions and, therefore, is in Criminal
19 History Category I. And he was convicted of all four counts
20 of the indictment.
21     Have I overlooked anything with respect to the
22 guidelines calculations?
23     MS. MIRABILE: No, Your Honor.
24     MR. WILLSTATTER: No, Your Honor.
25     THE COURT: All right. I next consider the

SHERRY BRYANT, RMR, CRR

PROCEEDINGS 34

1 sentencing options, both under the Criminal Code and the
2 Advisory Guidelines. Under Title 18 U.S. Code Section 1014,
3 1341, 1344 and 1349, the maximum term of imprisonment on each
4 count is 30 years. Under the Sentencing Table of the Advisory
5 Guidelines, with an adjusted offense level of 30 and a
6 Criminal History Category of I, the range of sentence, as we
7 all agree, is 97 to 121 months.
8       The supervised release term under Section 3583(a)
9 and (b)(1) of Title 18 provides for a supervised release term
10 of not more than five years on each count, and under Advisory
11 Guideline 5D1.1(a) and .2(a)(1) a term of supervised release
12 of at least two but not more than five years is required.
13       Probation is not an option for Mr. Watts.
14       Restitution under Section 3663(a) of Title 18 and
15 Guideline 5E1.1 is mandatory. The identified victim here is
16 Amalgamated Bank, and the most recent figure as set forth here
17 this morning for restitution is $15,324,157.64, after giving
18 credit for the recent $136.28 payment. Mr. Watts is liable
19 for restitution in the amount stated jointly and severally
20 with Codefendant Courtney Dupree.
21       The fine amount under Section 3571(d) of Title 18
22 provides for a fine of $30,648,587.84, which is twice
23 Amalgamated's total losses. Under Advisory Guideline
24 5E1.2(c)(3) and (4), the fine range is between 15,000 to 4
25 million dollars. That is $1 million on each of the four

SHERRY BRYANT, RMR, CRR

PROCEEDINGS 35

1 counts. However, pursuant to Advisory Guideline 5E1.2(a), Mr.
2 Watts may be excused from a fine if he is not able to pay a
3 fine or likely to become able to pay a fine. And based on the
4 presentence report's finding that Mr. Watts appears to be
5 unable to pay a fine and given the mandatory restitution
6 obligation and forfeiture obligation, I don't believe he will
7 be likely to become able in the future to pay a fine, so I
8 will not impose one, although I do wish him financial success
9 going forward. Provided he earns his money in a lawful way, I
10 would like him to make restitution to the bank. That is a
11 priority, in my mind.
12 The forfeiture amount under Section 982(a)(2)(A) of
13 Title 18 and Section 853(p) of Title 21 provides that Mr.
14 Watts must forfeit any property constituting or derived from
15 the offense of conviction. Mr. Watts was properly notified of
16 the government's intent to seek forfeiture pursuant to Federal
17 Rule of Criminal Procedure 32.2. And during the trial of Mr.
18 Watts' codefendant, Courtney Dupree, the jury determined by
19 means of a Special Verdict Sheet for Forfeiture that
20 $18,157,000 constituted or was derived from proceeds traceable
21 to the instant offense.
22 The jury determined this forfeiture amount for the
23 same crimes of which Mr. Watts was convicted at his later
24 trial.
25 Because the criminal forfeiture statute provides for

SHERRY BRYANT, RMR, CRR

Case 3:19-cr-00199-SRU Document 57-2 Filed 02/08/21 Page 10 of 15
Case 3:13-cr-00019-JCH Document 262-5 Filed 06/27/14 Page 56 of 213

PROCEEDINGS                                                    41

1  didn't sit right with some of his subordinates, but
2  nonetheless, he did exercise that authority in a strong manner
3  and that did, in fact, result in others becoming involved in a
4  fraud scheme. And I recognize, as Mr. Willstatter says, they
5  were adults who had the free will to either go along or not,
6  but I recognize that some of these individuals did have very
7  compelling family circumstances as well, with severely ill or
8  handicapped children.
9              After attending high school at the Fordham
10 Preparatory School, Mr. Watts attended and received his
11 bachelor's degree in Business Administration from Morehouse
12 College in Atlanta, Georgia. He worked several jobs to pay
13 for his education, and friends at Morehouse describe Mr. Watts
14 as intelligent, talented and extremely hardworking. Mr. Watts
15 also attended the elite Wharton Business School and graduated
16 with an MBA in 1997. Again, classmates from Wharton describe
17 him as intelligent and generous with his time.
18             Mr. Watts had advantages that many people don't
19 have. He had an elite private school education starting in
20 high school up through his graduate school at Wharton. He was
21 married to Seana Watts since 2004. Together they have four
22 very young children, two sets of twins who are ages seven or
23 eight and two years old.
24             Mrs. Watts is an attorney and the owner of two
25 laundromats. She has written to the Court and describes Mr.

PROCEEDINGS 42

1 Watts as very involved in the lives of their children, and a
2 photograph submitted in his support also attests to that, many
3 late night feedings, involvement with swimming lessons and
4 other activities with the children.  She reports her valid
5 concerns about caring for her children, two of whom have
6 health problems, if Mr. Watts is incarcerated.
7         Regarding his physical health, Mr. Watts reports no
8 serious health issues, other than the lingering effects of a
9 mini-gastric surgery in 2010.  He rarely drinks and reports no
10 drug use.  Mr. Watts has been gainfully employed for most of
11 his adult life.  I recognize his hard work and his efforts to
12 proceed with his education, with the assistance and support,
13 both financially and emotionally, of his parents and
14 stepfather.
15         Between 1997 and 2006, Mr. Watts worked for various
16 financial firms as a trader or associate.  His salary was
17 based on his performance and at times he earned as much as
18 $650,000 per year.  In 2004, Mr. Watts acquired a cleaning
19 company, which he ran until 2012.  In 2007, a codefendant and
20 Wharton classmate, Courtney Dupree, hired Mr. Watts to work
21 for GDC Acquisitions, LLC and its subsidiaries, the entities
22 that were the subject of his offenses of conviction.
23         Between 2007 and July 23rd, 2010, the date of his
24 arrest, Mr. Watts was the chief financial officer and later
25 the chief investment officer and, again, the chief financial

SHERRY BRYANT, RMR, CRR

PROCEEDINGS                                            43

officer of GDC. He earned approximately $200,000 a year in those roles. Since his arrest, Mr. Watts has been working at the laundromats owned by his wife. I've read, as I said, the 38 letters in support of Mr. Watts written by his family, friends and former business colleagues. These letters uniformly attest to his strong work ethic, his high level of intelligence and his willingness to help others. They also all express shock at Mr. Watts' conviction and request that the Court impose a lenient sentence.

Mr. Watts requests that any custodial sentence not be lengthy or not be served all at one time. He points to his family responsibilities, the fact that the instant offense is his first one, and that, as noted previously, he did not receive any of the proceeds of the fraud. I note that Mr. Watts' family responsibilities are significant and that it appears that Mr. Watts plays a very central role in his children's care and welfare.

Mr. Watts also argues that his sentencing guideline range is unfairly high in light of his offense and notes that the current fraud guidelines counsel higher sentences than they have in the past and perhaps will in the future.

The government requests a guidelines sentence, noting that Mr. Watts' fraud was perpetrated over many years and that he received a large salary for his work with GDC. The government also notes that Mr. Watts used his supervisory

SHERRY BRYANT, RMR, CRR

PROCEEDINGS 44

1. authority to involve his subordinates in fraudulent activity,
2. causing harm to their livelihoods and families and to the
3. victim, Amalgamated Bank.
4. After giving respectful consideration to the
5. Advisory Guidelines and all of the factors under Section
6. 3553(a), particularly the magnitude of the financial damage
7. that Mr. Watts' crimes wrought upon Amalgamated Bank, the
8. multiple acts of fraud and the duration of this fraudulent
9. activity, I consider on the other hand the fact that this is
10. his first offense, that he has otherwise led a law-abiding
11. life, that he has demonstrated the capacity to be
12. compassionate, caring and generous, and that he plays an
13. important role in the lives of his four very young children
14. and that he has not directly benefitted from the fraud. Given
15. all those considerations, I will impose a sentence that falls
16. below the Advisory Guideline range and is sufficient but not
17. greater than necessary for punishment and deterrence.
18. I would like Mr. Watts to fully understand that my
19. imposition of a sentence below the Guideline range is with the
20. expectation that Mr. Watts will make every effort above and
21. beyond merely paying his salary or a portion of his salary to
22. compensate and maximize his payments to Amalgamated Bank. If
23. it means going without cable television, I'd like that money
24. to go to Amalgamated. I would like to have the bank's need
25. for restitution made a priority for Mr. Watts.

SHERRY BRYANT, RMR, CRR

PROCEEDINGS 45

1  Any failure to make restitution or to manipulate his
2  finances or to make his finances appear less than they are
3  will not be tolerated. I must decline Mr. Watts' request for
4  a drastically reduced sentence or for intermittent
5  confinement. The crimes of which Mr. Watts has been convicted
6  are very serious and did cause substantial losses and harm to
7  Amalgamated and its shareholders.
8  Before I pronounce sentence, are there any issues
9  that either party wishes to address?
10  MS. MIRABILE: No, Your Honor.
11  MR. WILLSTATTER: No, Your Honor.
12  THE COURT: All right. I am authorized to find and
13  do find all of the facts appropriate for a determination of a
14  sentence as follows: And, again, I take into consideration my
15  view that a sentence below the Guidelines will enable Mr.
16  Watts to make restitution and will enable him to continue to
17  provide emotional and financial support to his young children
18  and his wife. I sentence Mr. Watts to a term of custody of 37
19  months on each of Counts One through Four, to run
20  concurrently.
21  Mr. Watts shall also serve five years of supervised
22  release with the following special conditions: He shall
23  comply with the restitution and forfeiture orders, with a
24  priority for the restitution. He shall start making monthly
25  payments while in custody through the Bureau of Prisons'

SHERRY BRYANT, RMR, CRR

PROCEEDINGS 46

1 Financial Responsibility Program. In addition to facilitating
2 payments to his victims, I believe the BOP will accord certain
3 benefits to Mr. Watts if he does participate in that program,
4 including just institutional benefit, and it may also assist
5 him in shortening his sentence.
6     He must make his first payment after his release on
7 the first day of the first month after his release in an
8 amount that is no less than 20 percent of his income after
9 deductions required by law. So after federal, state and local
10 taxes, federal unemployment and social security are deducted,
11 20 percent of his income shall be paid to restitution. And
12 once that is paid to his forfeiture or a forfeiture is
13 credited toward his restitution, the adjustments will be made
14 accordingly by the government.
15     MR. WILLSTATTER: Do you want the payment to the
16 Marshal Service or --
17     THE COURT: No, it will go to the Clerk of the
18 Court. The restitution payments go to the Clerk of the Court.
19 He should put his case docket number on his check and it will
20 be credited against his restitution.
21     Mr. Watts must provide the Probation Department and
22 the U.S. Attorney's Office with complete and truthful
23 financial disclosure, including all bank accounts,
24 investments, real estate and other property or assets that he
25 owns or to which he has access or in which he has any

SHERRY BRYANT, RMR, CRR