# EXHIBIT D

1

```
                    UNITED STATES DISTRICT COURT

                       DISTRICT OF CONNECTICUT

_____
United States of America      ) July 23, 2014
            Government        ) 10:00 a.m.
v.                            )
Jesse C. Litvak               ) 3:13cr19(JCH)
            Defendant.        )
_____)


                                    141 Church Street
                                    New Haven, Connecticut

              SENTENCING HEARING


B E F O R E:
                  THE HONORABLE JANET C. HALL, U.S.D.J.



A P P E A R A N C E S:

For The Government    :    Jonathan N. Francis
                           Christopher Mattei
                           U.S. Attorney's Office-NH
                           157 Church St., 23rd floor
                           New Haven, CT  06510


For the Defendant     :
                           Patrick Smith
                           John Michael Hillebrecht
                           DLA Piper US LLP-NY
                           1251 Avenue of the Americas,
                           27th Floor
                           New York, NY 10020-1104

                           Ross Garber
                           Shipman & Goodwin
                           One Constitution Plaza
                           Hartford, CT  06103-1919
```

Case 3:19-cr-00199-SRU   Document 57-4   Filed 02/08/21   Page 3 of 11
Case 3:13-cr-00019-JCH   Document 273   Filed 07/25/14   Page 60 of 178

60

1  give him the third even if I was inclined to because no
2  motion has been made.  But the two points under 3E1.1A, the
3  guidelines provide that, quote, if the defendant clearly
4  demonstrates acceptance of responsibility for his offense,
5  end quote, his offense level is to be decreased by two
6  levels.  Generally, a defendant who puts the government to
7  its burden of proof at trial is not entitled to a reduction
8  of his offense level for acceptance.
9            The Application Note 2, which is quoted in U.S. vs.
10 Castano, which is a Second Circuit case from back in 1993,
11 reads, quote, this adjustment is not intended to apply to a
12 defendant who puts the government to its burden of proof at
13 trial by denying the essential factual elements of guilt is
14 convicted and only then if it's guilt and expresses remorse.
15 There is a rare exception under Application Note 2 where a
16 defendant may clearly demonstrate an acceptance for his
17 criminal conduct even though he exercises his constitutional
18 right to a trial, end quote.  If, for example, he admits the
19 relevant conduct but changes the applicability of a statute
20 to his conduct, or admits the conduct and that the statute
21 prohibited the conduct but makes a constitutional challenge
22 to a statute.
23           I don't believe that Mr. Litvak has done either of
24 those things.  Nor do I believe that he's demonstrated
25 clearly an acceptance of responsibility.  Again, he does not

Case 3:19-cr-00199-SRU   Document 57-4   Filed 02/08/21   Page 4 of 11
Case 3:13-cr-00019-JCH   Document 273   Filed 07/25/14   Page 61 of 178

61

1  have to do that. But we're talking about whether I should
2  reduce his guideline range by two levels because he has. And
3  it is the court's conclusion that he has not. He did not
4  admit the elements of his conduct. He didn't admit, for
5  example, that the materiality. He didn't admit intent. And
6  so he absolutely is entitled to his trial. He's entitled to
7  challenge what the court has done and what the jury has done
8  on appeal, but the judgment I need to make right now is has
9  he accepted responsibility for this offense, and the court
10 could not make that finding, let alone clearly make that
11 finding. So the court determines that a two-level reduction
12 in the guidelines for acceptance is not applicable.
13         So the adjusted offense level is 31. The total
14 offense level is 31. The defendant has no criminal history
15 so he's clearly in Category I. The guidelines -- under the
16 current guidelines for that offense level and criminal
17 history is 108 to 135 months.
18         Other than your objections to loss and acceptance,
19 Attorney Smith, is the guideline calculation otherwise
20 acceptable? Not much left to it, but there's no other
21 objection I have overlooked?
22         MR. SMITH: No, your Honor.
23         THE COURT: And for the government?
24         MR. FRANCIS: No objection, your Honor.
25         THE COURT: So that brings us really, though, to --

Case 3:19-cr-00199-SRU   Document 57-4   Filed 02/08/21   Page 5 of 11
Case 3:13-cr-00019-JCH   Document 273   Filed 07/25/14   Page 137 of 178

137

within that box, number I ascribe to them is not particularly helpful, at least to this judge.

I will start, Mr. Litvak, with my view of the nature and circumstances of what you did. I think, unlike you, I do not view you as a victim. I don't view you as singled out. I don't view you as somebody who happened to do something that everybody is doing and nobody thought was illegal and, bam, all of the sudden you got caught. You lied. Now maybe that's what people do every day on Wall Street. It still doesn't make it legal. Lots of us lie every day in our lives. Fortunately, most of the time it doesn't have much consequence. It's a white lie. But when it has a consequence, when it's material, which this jury found, it's a crime. If you don't think that -- obviously, you don't think it in the sense that you wish to take an appeal and challenge the convictions, but, in my mind, that's a no brainier. If anybody on Wall Street thinks it's okay to lie, I hope that, to the extent any message gets out from this sentencing, I hope that message gets out.

I agree with the government, we want our markets to be open and transparent. And I agree completely with you, that you didn't have to tell this buyer anything. For example, you didn't have to tell them what the price was. When you chose to tell him and you chose to lie about it, that was a crime.

Case 3:19-cr-00199-SRU   Document 57-4   Filed 02/08/21   Page 6 of 11
Case 3:13-cr-00019-JCH   Document 273   Filed 07/25/14   Page 138 of 178

138

```
 1              You also did it many times.  You did it such that
 2    there were many victims in the case.  We have no disagreement
 3    you have done it at least 55 times over a three-year period.
 4    And certainly the loss is at least in the mid 4 million
 5    range.  It may be that it is not a significant percentage of
 6    the overall picture of Jefferies profits or even the profits
 7    you brought to Jefferies in this period.  But it's, as
 8    somebody once said, it's real money.  It mattered to you to
 9    make the lie because you wanted to benefit from it.  You
10    didn't put it all in your pocket, but it mattered to you.  I
11    think it's fair to say it would have mattered, and it did
12    matter to the people you were dealing with.
13              Again, we don't have a precise formula for what your
14    bonus was in relationship to what you did.  But I certainly
15    think it's fair to say that, you know, certainly somewhere in
16    the range of 700,000 to a million is what you benefited.
17    It's possible that the last dollar you brought in the door,
18    which I would view as the last dollar, were more valuable in
19    the bonus calculus.  I don't know.  Could be that they were
20    less valuable.  We don't know whether it's 5 percent, 12
21    percent or 20 percent.  But there's no question that you went
22    to work every day to make sales.  You went to work every say
23    to earn a commission or a profit for your company because at
24    the end of the year, you thought you were going to make money
25    from that.  In my view, that's a significant part of the
```

Case 3:19-cr-00199-SRU   Document 57-4   Filed 02/08/21   Page 7 of 11
Case 3:13-cr-00019-JCH   Document 273   Filed 07/25/14   Page 139 of 178

139

1   circumstance of the crime you committed.

2           Your counsel has made much of the climate on Wall
3   Street, the climate at Jefferies.  I did see evidence that
4   what you did, at least in that one instance that I
5   specifically recall, was applauded.  I would view it as an
6   applaud by your supervisor.  It sounds like the government
7   has recognized there were others who engaged in conduct like
8   this beside you, but I also heard the government -- and I
9   didn't hear any evidence certainly presented or proposed or
10  proffered by your lawyer that you were, shall we say, the
11  star of this conduct.  That while others may have done it and
12  there may have been people telling you, yeah, this is a good
13  thing to do, you seem to have really run with it in a way
14  that others did not at the company.

15          I guess part of the circumstance of this crime that
16  I can't ignore is the context in which this market was
17  operating.  This was a market that was dead in the water.
18  These bonds were going to be nonmarketable, right, but for
19  the government's infusion of money over great debate and
20  disagreement of whether that money should have gone to this
21  purpose.  All the sudden there's buyers out there for this
22  market that you could then benefit from by being the broker.

23          And I don't disagree with counsel that, you know,
24  the United States isn't the victim here.  The way it is, say,
25  in a tax case, but you were mindful, I think.  I think there

Case 3:19-cr-00199-SRU   Document 57-4   Filed 02/08/21   Page 8 of 11
Case 3:13-cr-00019-JCH   Document 273   Filed 07/25/14   Page 140 of 178

140

was a chat to this effect, or certainly the man at Canter called it out to you when you -- after you had disclosed what had happened, that this was really government money. This was a market that existed because of taxpayer money. And you were, in effect, taking advantage of it through fraud.

Obviously, everybody on this side of the bar sat through the whole trial and many of the people behind the bar did as well, I know. I should state for the record that the nature of the fraud here was there were occasions when you told the buyer that they could get the bond they wanted and that the seller would sell it at X when, in fact, the price the seller had told you they would take was less than X. There were situations where you told a seller that a buyer would pay X when, in fact, the buyer would pay X plus, but you induced the seller to sell based upon that lower price represented. And there were times, as I recall, where you said to the buyer that there was a third-party seller with whom you were vigorously negotiating and had finally worked out a price when, in fact, it was a bond that was in the inventory of Jefferies, there was no other seller. I'm not sure if that covers every one of them but that's the principle ones that I remember from trial.

I guess the bottom line is the nature and circumstances of your crime was a crime of fraud, lies, repeated lies. It's my view that you were motivated to make

Case 3:19-cr-00199-SRU   Document 57-4   Filed 02/08/21   Page 9 of 11
Case 3:13-cr-00019-JCH   Document 273   Filed 07/25/14   Page 141 of 178

141

1   money.  That's what you said to the man, is it Canter from
2   AllianceBernstein?  Whoever that list was sent to, who called
3   you up.  I mean, your answer was something to the effect of
4   you were sorry, but there was a lot of pressure on you to
5   make money.  I understand that's a pressure from the company.
6   They want you to make more profits for them, but at the end
7   of the year, those more profits also translate into your
8   pocket, which obviously over those three years, you did very
9   well.
10           However, I also recognize that your gain, the gain
11  that you did put in your pocket, even if I account for a
12  nonmonetary gain on the level of you benefited in stature or
13  standing at your company because you had more profits
14  certainly doesn't approach the actual loss that I found and
15  that I believe the victims here suffered.  As I have already
16  gone through about how much did you gain from this, it's a
17  percentage obviously.  It's probably, as I say, somewhere
18  between 5 and 10 percent.  I'm sorry.  Maybe, as I say, my
19  sense of it is somewhere between 700 and a million dollars.
20           I think I'm going to stop in -- I'm going to take a
21  slight digression on the nature and circumstances to speak a
22  few moments about the loss table and why I think the
23  guidelines here are very unhelpful.  They are unhelpful for
24  some of reasons I sort of hinted at in my questions.  They
25  are unhelpful because they effectively overwhelm the

Case 3:19-cr-00199-SRU   Document 57-4   Filed 02/08/21   Page 10 of 11
Case 3:13-cr-00019-JCH   Document 273   Filed 07/25/14   Page 142 of 178

142

guideline analysis. I mean, I think although the guidelines don't consider all factors that I should consider now under 3553(a), they certainly were designed to consider more than one factor. The aspects of was somebody a leader, was somebody a minor player? Did somebody abuse a trust like a lawyer, or did somebody -- was it a vulnerable victim? Those kind of things, the guidelines tried to put a value on each of those characteristics so that ultimate total offense level was supposed to reflect sort of a panoramic view of the offense committed.

What I think happens here with the loss tables at the levels they are now at, is that the loss aspect of the crime, in effect, overwhelms all the other aspects. As I say, in this instance I think 60 percent of the total offense is attributable to just sheer dollars without any regard for any other characteristic of the offense. Therefore, I don't find the guidelines helpful to me at all.

There's Murphy's law, whatever I want is not in front me. Everything I don't need at the moment is in front of me. I had notes about loss. I mentioned Justice Briar's comments about the loss table as originally adopted, which was at a much lower level than the current ones. Which were designed -- I guess in that sense, those could be said to be maybe empirical. They were designed to reflect the fact that the actual data of sentencing reflected that the chart --

Case 3:19-cr-00199-SRU   Document 57-4   Filed 02/08/21   Page 11 of 11
Case 3:13-cr-00019-JCH   Document 273   Filed 07/25/14   Page 143 of 178

143

that it should be zero points for loss, for any amount of loss because everybody got a probationary sentence.

And Justice Briar wrote to mitigate the inequities of these discrepancies, the commission decided to require short but certain terms of confinement for many white-collar offenders who traditionally have received only probation. And I would also agree with Mr. Bowman, an oft commentator on the guidelines and sentencing in which he says, an archeological foray as into how the particular numbers of the loss table were chosen is likely to be of little practical use for judges or lawyers.

And I don't lightly -- I'm not, in effect, saying I'm ignoring the guidelines. But I think to the extent that they have been driven to where they are by a loss table which is not based on empirical data and which overwhelms the rest of the guideline considerations such that it's almost without regard to the rest of the characteristics in this case, in my opinion, I need to really scrub through the nature and circumstances and decide what that informs my judgment to be as opposed to be taking a guideline number that's derived in principle part by the sheer dollar amount, which, as I said, while it's a loss, one aspect of it that isn't reflected in the loss table is that it's not money that he put in his pocket. In other words, a defendant who put between two and a half million and seven million in his pocket would get the